UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Paul Ashley Tester,

      Plaintiff,

      v.                         Civil Action No. 2:19-cv-146-cr-jmc

Andrew Pallito et al.,

      Defendants.

## REPORT AND RECOMMENDATION
(Docs. 14, 19, 22)

Plaintiff Paul Ashley Tester, an inmate proceeding *pro se*, brings this action under 42 U.S.C. § 1983 alleging that he was denied proper medical care for pain in his right shoulder while he was in the custody of the Vermont Department of Corrections (DOC). (Doc. 5.) Tester names as Defendants Andrew Pallito, the former DOC Commissioner; Prison Health Services, Centurion, and Correct Care Solutions, who have each been contracted to provide health care services to the DOC at various times; CoreCivic (formerly Corrections Corporation of America (CCA)); and three other persons employed by the DOC (collectively, with Pallito, "State Defendants"). (*Id.*) He seeks damages totaling $50 million. (*Id.* at 18.) Presently before the court are Defendants' Motions to Dismiss. (Docs. 14, 19, 22.)

For the reasons stated below, I recommend that Defendants' Motions to Dismiss be GRANTED.

## Background

Tester filed his Complaint on July 31, 2019.[1]   He alleges that "from February 2007 to June 19, 2014[,] [Defendants] knew and did nothing to keep Plaintiff from being in extre[]m[e] pain, constituting deliberate indiffer[e]nce in violation of the 8th [and] 14th [Amendments]."  (Doc. 5 at 16.)  Specifically, he states that he filed multiple complaints regarding pain in his right shoulder, but that he "was never given any medical care."  (*Id*. at 14.)  For most of his incarceration, he was housed at an out-of-state prison in Kentucky.  (*Id*. at 13–14.)  Tester was granted parole on June 19, 2014.  (*Id*. at 15.)  While out on parole, he alleges that he visited a doctor and underwent surgery on his shoulder in December 2015.  (*Id*.)  He was reincarcerated on February 26, 2018 for violating his conditions of release on parole. (Doc. 19-2.)[2]

In response to Plaintiff's Complaint, Defendants filed Motions to Dismiss (Docs. 14, 19, 22), arguing that Tester's claim is barred by the statute of limitations for § 1983 actions in Vermont.  The State Defendants and CoreCivic also assert

---

[1] Although Tester's Complaint was docketed on August 27, 2019, the "prison mailbox rule" requires the court to consider the date on which a *pro se* prisoner presented his document to prison staff for filing.  *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Nobel v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001).  Courts in the Second Circuit generally assume that the inmate delivered the filing to officials on the date it was signed.  *See United States v. Aguiar*, Case No. 2:00-cr-119, 2017 WL 3278887, at *3 (D. Vt. Aug. 2, 2017).  Here, Tester's Complaint is not dated; however, the *In Forma Pauperis* Application that accompanied the Complaint is dated July 31, 2019.  Thus, the court considers July 31, 2019 to be the date Tester handed his Complaint and *In Forma Pauperis* Application to prison staff for filing.  *See Vilchel v. Connecticut*, Prisoner Case No. 3:07–cv–1344(JCH), 2009 WL 179804, at *2 (D. Conn. Jan. 23, 2009) (citing *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993)).

[2] The court takes judicial notice of Tester's Offender Movement History.  *See Gilbeau v. Pallito*, Civil Action No. 1:11–CV–232, 2012 WL 2416719, at *7 (D. Vt. May 22, 2012) ("A printout of an inmate's movement history has been held to qualify as a public document that is eligible for judicial notice."), *report and recommendation adopted*, 2012 WL 2416654 (D. Vt. June 26, 2012).

several other bases for dismissal: (1) res judicata, because Tester has already raised these claims in three actions brought in the Eastern District of Kentucky; (2) failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a); (3) sovereign immunity as to claims against the State Defendants in their official capacities; (4) failure to allege personal involvement to state a claim against the State Defendants in their individual capacities; and (5) failure to allege a policy or custom to state a claim against CoreCivic. (Doc. 19.) In the alternative, Defendants seek transfer of the case to the Eastern District of Kentucky. (*Id*. at 17–18.)

## Analysis

### I.    Legal Standard

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but plaintiffs must allege facts that permit "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. Accordingly, allegations that "are so vague as to fail to give the defendants adequate notice of the claims

3

against them," are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

On a Rule 12(b)(6) motion to dismiss, "the [c]ourt is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference," as well as "facts of which judicial notice may properly be taken." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014). Moreover, the court is not obliged to "accept allegations that are 'contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.'" *Adeniji v. N.Y. State Office of State Comptroller*, No. 18 Civ. 0761 (PAE) (BCM), 2019 WL 4171033, at *3 (S.D.N.Y. Sept. 3, 2019) (slip op.) (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555, 557 (holding that a pleading containing "a formulaic recitation of the elements of a cause of action," "labels and conclusions," or "naked assertion[s]" devoid of factual enhancement, does not satisfy Federal Rule of Civil Procedure 8(a)). A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Id.* at 558. Because Tester is

4

representing himself, in addition to accepting his factual allegations as true, the court is also required to read his Complaint liberally and construe it to raise the strongest possible argument. *Harris v. Miller*, 818 F.3d 49, 56–57 (2d Cir. 2016) (per curiam).

## II.    42 U.S.C. § 1983

Tester brings his claims pursuant to 42 U.S.C. § 1983. Under § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* The U.S. Supreme Court has identified two elements of a § 1983 claim: "a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 does not itself create or establish a federally protected right; instead, it creates a cause of action to enforce federal rights created elsewhere, such as a federal constitutional right. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Tester alleges deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

5

### III.    Statute of Limitations

Claims brought under § 1983 are subject to the limitations period provided by the state for personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Vermont, that statute of limitations is three years. *See Bain v. Cotton*, No. 2:06 CV 217, 2009 WL 1660051, at *4 (D. Vt. June 12, 2009) (citing 12 V.S.A. § 512(4)). This court has acknowledged, however, that Vermont's statutory tolling provision applies to inmates. *See id.* Thus, "[w]hen a person entitled to bring an action specified in this chapter is a minor, insane or imprisoned at the time the cause of action accrues, such person may bring such action within the times in this chapter respectively limited, after the disability is removed." 12 V.S.A. § 551(a).

"Federal law governs when a cause of action accrues, or, in other words, when the statute of limitations 'clock' begins to run." *Beaupre v. O'Connor*, No. 2:14–CV–256, 2015 WL 5530180, at *2 (D. Vt. Sept. 18, 2015) (citing *Wallace*, 549 U.S. at 388). In the Second Circuit, a claim accrues "'when the plaintiff knows or has reason to know of the injury which is the basis of his action,' such as 'when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.'" *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).

Tester first argues that his claim did not accrue until either May 7, 2015, when he learned he would need shoulder surgery, or December 3, 2015, when such surgery occurred. (Doc. 23 at 2.) This assertion, however, is belied by the record. Tester's Complaint alleges that Defendants knew of and failed to adequately treat

6

his shoulder pain from "February 2007 to June 19, 2014."[3]  (Doc. 5 at 16.)

Moreover, Tester filed his first action alleging inadequate medical care relating to

his shoulder pain in the Eastern District of Kentucky on November 14, 2008.  (Doc.

19-4.)  Tester clearly became aware of the basic facts of his alleged injury during

that period of incarceration or, at the latest, when he filed his first action based on

the same facts involved in this case.  *See Singleton*, 632 F.2d at 191.  Because Tester

was incarcerated at the time his claim accrued, the statute of limitations was tolled

for the duration of his initial imprisonment and did not begin to run until his

release on parole on June 19, 2014.  *See* 12 V.S.A. § 551(a).

Tester also argues that the statute of limitations does not begin to run until

he completes his maximum sentence.  (Doc. 23 at 2.)  For support, he cites to

*Gilbeau v. Pallito*, Civil Action No. 1:11–CV–232, 2012 WL 2416719, at *7 (D. Vt.

May 22, 2012).  Tester misconstrues *Gilbeau*.  In that case, the plaintiff's claim

accrued in March 2005 while he was imprisoned.  *Id*. at *6.  He was released to

community supervision in November 2005, escaped from community supervision in

January 2006, and returned to prison in March 2006.  He completed his maximum

sentence in December 2006 and was subsequently reincarcerated on different

---

[3] The continuing violation doctrine also cannot save Tester's claim.  The continuing violation doctrine allows a plaintiff to challenge "a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."  *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009).  A plaintiff asserting "a continuing violation for statute of limitations purposes . . . must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in furtherance of that policy.'"  *Id*. (alteration in original) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).  Here, even assuming the presence of a policy of deliberate indifference, Tester has not alleged facts suggesting that Defendants committed acts in furtherance of the policy after June 19, 2014.  Thus, the continuing violation doctrine is inapplicable to Tester's claims.

charges. *Id.* The defendants argued that "the tolling period ceased when [the plaintiff] was released from prison," *id.*, and should not restart upon his reincarceration on different charges. Thus, the court was concerned only with whether "a subsequent incarceration on a new charge [would] cause the tolling period to recommence." *Id.* at *7.

After reviewing decisions from other courts, the *Gilbeau* court held that it did not and "therefore [found] that [the plaintiff's] three-year limitations period commenced, *at the latest*, in December 2006 when he completed his maximum sentence." *Id.* (emphasis added). Because the plaintiff's 2011 complaint was untimely regardless of whether the limitations period began to run in November 2005, when he was released to community supervision, or in December 2006, when he completed his maximum sentence, the court did not resolve which date triggered the limitations "clock." Instead, it simply found that, even applying the later date, the plaintiff's complaint was time-barred. Contrary to Tester's assertion, *Gilbeau* did not consider or hold that the limitations period begins to run when an inmate completes his maximum sentence.

In fact, caselaw referred to by the *Gilbeau* court suggests the opposite. There, the court noted that "when a prisoner is freed from confinement, 'regardless of whether it is by an illegal means or by a legitimate means, the statute of limitations begins to run and it is not tolled by any subsequent imprisonment.'" *Id.* (quoting *Burrell v. Newsome*, 883 F.2d 416, 420 (5th Cir. 1989)); *see also Kaiser v. Cahn*, 510 F.2d 282, 286 (2d Cir. 1974) ("Once the prisoner is released, the benefit of

the tolling statute is lost forever. A later incarceration will not retoll the statute."). Moreover, there is considerable precedent to support Defendants' contention that the statute of limitations begins to run when a prisoner is released on parole. *See Boag v. Chief of Police, City of Portland*, 669 F.2d 587, 589 (9th Cir. 1982) (holding that disability of imprisonment "ceased" when inmate was released on parole for 47 days and his "subsequent reincarceration did not reinstate the tolling statute"); *Jordan v. State*, 290 N.Y.S.2d 621, 625–26 (N.Y. Ct. Cl. 1968) (holding that the statute of limitations began to run on date inmate was released on parole and, "once having begun to run, continued to run notwithstanding the claimant's reincarceration for violation of parole"); *Deutch v. Hoffman*, 211 Cal. Rptr. 319, 321 (Cal. Ct. App. 1985) (statute of limitations not tolled while prisoner was on parole). Courts in the Second Circuit have reached similar conclusions. *See Kaiser*, 510 F.2d at 286–87 (statute of limitations began to run while prisoner was on bail pending appeal); *Finley v. Hersh*, No. 1:12–CV–162–JGM, 2013 WL 3450270, at *4 (D. Vt. July 9, 2013) (statute of limitations began to run when prisoner was released on supervised release). This court should therefore find that Tester's three-year limitations period commenced when he was released on parole on June 19, 2014. Without any other form of tolling, his 2019 Complaint is untimely.

Tester submits that he "was limited [in] what he could do [to pursue his claims] because he is a registered sex offender." (Doc. 23 at 2.) The doctrine of equitable tolling permits a court to "extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Valverde v.*

*Stinson*, 224 F.3d 129, 133 (2d Cir. 2000) (internal quotation marks omitted).

Equitable tolling is available only in "rare and exceptional circumstance[s] in which

a party is prevented in some extraordinary way" from filing his complaint on time.

*Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (alteration

in original) (internal citation and quotation marks omitted).  The plaintiff must also

show that he "acted with reasonable diligence during the time period [he] seeks to

have tolled."  *Id.* (internal quotation marks omitted).  Finally, "the plaintiff must

show that there was a causal relationship between the extraordinary circumstances

claimed and the lateness of the filing, a demonstration that cannot be made if the

[plaintiff], acting with reasonable diligence, could have filed on time

notwithstanding the extraordinary circumstances."  *Gonzalez v. Rikers Island

Warden*, 14 CV 6749 (RRM)(LB), 2017 WL 9674495, at *3 (E.D.N.Y. Dec. 11, 2017)

(alteration in original) (internal quotations marks omitted).

    Equitable tolling is not appropriate here.  Tester alleges only that he could

not use computers or go to the library to do research.  (Doc. 23 at 2.)  Even if true,

Tester's described difficulties do not constitute "extraordinary" circumstances

sufficient to warrant equitable tolling.  Numerous courts in this Circuit have held

that a prisoner's limited access to the law library is not an extraordinary

circumstance.  *See Cotto v. Pabon*, No. 07 Civ. 7656(AJP), 2008 WL 4962986, at *12

(S.D.N.Y. Nov. 20, 2008) (collecting cases).  Tester's restricted access while on

parole likewise does not present an extraordinary or inequitable circumstance to

justify equitable tolling.  Furthermore, Tester has not shown that he acted with

reasonable diligence nor has he demonstrated why his restricted access to a library or computer prevented him from filing his Complaint within the prescribed statute of limitations, especially given that he has previously filed several lawsuits based on the same facts and claims. Accordingly, equitable tolling does not apply, and Tester's Complaint is barred by the three-year statute of limitations governing § 1983 actions.

## IV.     Res Judicata and Collateral Estoppel

Defendants argue that, even if Tester's Complaint was timely, it would nevertheless be barred by the doctrine of res judicata because the same claims were previously adjudicated in three different actions brought in the Eastern District of Kentucky.[4] (Doc. 19 at 12–17.)[5] Tester first filed suit on November 10, 2008, alleging that his medical care at the Kentucky prison violated the Eighth Amendment because the prison doctor refused to prescribe Tester's preferred medication, "Ultram," to alleviate pain associated with a "work related accident" that occurred in November 2003. *See Tester v. Hurm*, Civil Action No. 08–cv–466–JBC, 2009 WL 33447, at *1 (E.D. Ky. Jan. 5, 2009). (Doc. 19-4 at 4; Doc. 19-5 at

---

[4] Tester's Complaint reveals that he also filed a lawsuit "dealing with the same facts involved in this action" in Vermont state court in 2009. (Doc. 5 at 10.) However, the court has not been provided with any documentation from that proceeding. Consequently, the court is unable to fairly assess the preclusive effect, if any, of that lawsuit. Because Defendants rest their res judicata argument solely on Tester's actions brought in the Eastern District of Kentucky, the court's analysis will only focus on those suits as well.

[5] The court takes judicial notice of the prior proceedings in the Eastern District of Kentucky. *See Briggs v. Warfield*, No. 2:06–CV–227, 2007 WL 4268918, at *3 (D. Vt. Nov. 30, 2007) ("When a party moves to dismiss on the basis of res judicata, the Court may consider both the face of the complaint and matters of which the Court may take judicial notice, including prior court decisions.").

3–4.)  There, he named as defendants several medical staff members, the warden and assistant warden, and CCA.  (Doc. 19-5 at 3.)  The court dismissed Tester's claims without prejudice, finding that he failed to demonstrate that he exhausted administrative remedies and because he failed to show that the named defendants were deliberately indifferent to his medical needs.  (*Id*. at 5–7.)

Tester filed his second action in the Eastern District of Kentucky on February 20, 2009.  *See Tester v. Hurm*, Civil Action No. 09–cv–90–JBC, 2009 WL 1424009 (E.D. Ky. May 20, 2009).  (Doc. 19-8.)  He named the same defendants and also attempted to name Pallito, the Vermont DOC Commissioner at the time, as a co-plaintiff.  (*Id*. at 2; Doc. 19-7 at 4.)  Tester again alleged violations of the Eighth Amendment for failure to adequately treat his pain, including shoulder pain, arising from a previous work injury.  (Doc. 19-7 at 4–5.)  As before, the court dismissed the case without prejudice for failure to state a claim and failure to properly exhaust administrative remedies.  (*Id*. at 6–9.)

On September 20, 2009, Tester filed a third suit in the Eastern District of Kentucky, raising the same claims premised on the same facts.  *See Tester v. Hurm*, Civil Action No. 09–318–JBC, 2011 WL 6056407 (E.D. Ky. Dec. 6, 2011).  (Doc. 19-12.)  On the defendants' motion for summary judgment, the court found that Tester had received adequate medical attention and treatment for his pain, "and the real dispute at the heart of his complaint is [disagreement] over the course of treatment."  (Doc. 19-13 at 5.)  Because the refusal to prescribe him the medication of his choice was "a reasoned medical judgment," rather than deliberate

indifference, the court granted summary judgment to the defendants on Tester's Eighth Amendment claim.  (*Id.*)

Res judicata, or claim preclusion, bars relitigation where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).  Here, there is no doubt that Tester's previous suits satisfy the first element.  *See Rafter v. Liddle*, 704 F. Supp. 2d 370, 375 (S.D.N.Y. 2010) ("It is well []established that summary judgment is an adjudication on the merits for res judicata purposes."); *Brodsky v. N.Y.C. Campaign Fin. Bd.*, Case No. 18-2615, 2019 WL 5853611, at *2 (2d Cir. Nov. 8, 2019) ("For purposes of . . . res judicata, a 'dismissal for failure to state a claim is a final judgment on the merits.'" (quoting *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009))).

With respect to the third element, the claim asserted by Tester was also raised and litigated in his prior actions—namely, that he received inadequate medical care for his shoulder pain during his initial incarceration in violation of the Eighth Amendment.  He seeks to bring that claim again because he states he "can prove now that Defendants['] own doctor in Windsor Work Camp [in Vermont] prescribed [him] the medication of Ultram"—the medication he preferred, but was denied while housed in Kentucky.  (Doc. 23 at 1.)  This fact, however, presents nothing more than a subsequent difference of medical opinion and cannot suffice to

create a new cause of action.  *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 384 (2d Cir. 2003) ("[C]laim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim."); *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 112 (2d Cir. 2000) (claim barred by res judicata because the facts post-dating the first action did "not create a 'new' cause of action that did not exist when the prior suits were brought").

Moreover, because CCA (now CoreCivic) was a named defendant in the prior actions, Tester's claim against CoreCivic is barred by res judicata.  Although the other defendants were not named in the previous lawsuits, they may have nevertheless been in privity with the medical staff and Kentucky prison officials that were named as defendants.  "[P]rivity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion."  *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995); *see also Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003) ("Res judicata operates to preclude claims, rather than particular configurations of parties; Plaintiff's addition of new defendants, in the context of allegations of their involvement in the series of alleged deprivations, does not entitle him to revive the previously-dismissed claims.").

When Tester filed his second action in the Eastern District of Kentucky, he named Pallito as a co-plaintiff, noting his position as Commissioner of the Vermont DOC, and noting that it was his "ultimate responsibility . . . to supervise

14

Department staff, actors, agents, agency designees, representatives and/or contractors," and to ensure "that his serious medical needs are treated." (Doc. 19-8 at 3.) Moreover, Tester alleged in his second and third lawsuits that CCA was contracted by the DOC to provide him with adequate medical care, among other things. (*Id.* at 4; Doc. 19-12 at 4.) *See McCarroll v. U.S. Bureau of Prisons*, Civil Action No. 3:11–cv–934 (VLB), 2012 WL 3940346, at *9 (D. Conn. Sept. 10, 2012) (contractual relationship sufficient to establish privity between new defendant and original defendant); *Bell v. Nassau Interim Fin. Auth.*, 16-CV-5447(JMA)(AYS), 2019 WL 4917892, at *5 (E.D.N.Y. Sept. 30, 2019) (same). Thus, Tester clearly knew about the State Defendants at the time of his prior suits, and that they had "a sufficiently close relationship to the original defendant[s]." *Cent. Hudson*, 56 F.3d at 368. In sum, the doctrine of res judicata at least bars this action against CoreCivic and likely against the State Defendants as well.

As to the remaining defendants, the court need not resolve the question of privity, however, because even if res judicata did not apply, collateral estoppel would bar the claims against them.[6] Collateral estoppel, or issue preclusion, is appropriate where: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party [against whom collateral estoppel is sought] had a full and fair opportunity to

---

[6] Although Defendants do not raise collateral estoppel as a defense, the Second Circuit has upheld a district court raising collateral estoppel *sua sponte* without giving the opposing party an opportunity to respond. *See Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (discussing *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998)).

litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (internal quotation marks omitted). A defendant who was not a party to a prior action may use collateral estoppel "defensively" in a new suit against a plaintiff who litigated and lost the decided issue in the first case against another defendant. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–31 (1979); *Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("[A] new defendant in the plaintiff's second lawsuit may defensively invoke collateral estoppel regarding issues of law or fact decided in the plaintiff's first action.").

Here, Tester has clearly litigated the issue of whether the medical care he received for his shoulder pain during his initial incarceration was adequate and whether the prison doctor's denial of an Ultram prescription in Kentucky violated his Eighth Amendment rights. (*See, e.g.*, Doc. 19-13 at 4–6.) The issue was decided in the Eastern District of Kentucky and its resolution was indisputably necessary to support the court's grant of summary judgment in favor of the defendants. As the court explained:

> [The prison doctors], citing concerns over [Ultram]'s narcotic effects and potential for addiction, elected not to prescribe it to Tester. This does not amount to cruel and unusual punishment under these circumstances, because it is not an "unnecessary and wanton infliction of pain," . . . but a reasoned medical judgment taking Tester's best interests into account. Tester has received medical attention for his pain, and the real dispute at the heart of his complaint is over the course of treatment. The court, however, is not in a position to second-guess the medical decisions of Tester's treating physicians. . . . As Tester's physicians have decided that [Ultram] is unsuitable for long-term use, they have prescribed other drugs to help alleviate Tester's pain . . . .

> There is no genuine dispute over whether Tester's care has been in
> compliance with prevailing medical standards.

(*Id.* at 5–6.) (internal citations omitted).

Tester admits that he previously brought these claims in the Eastern District
of Kentucky (Doc. 23 at 1, 4), but argues that he should not be estopped from
asserting them again here because he "was new to this type of litigation," (*id.* at 4).
He further states that he "can prove now that Defendants['] own doctor in Windsor
Work Camp prescribed [him] the medication of Ultram." (*Id.* at 1.) But this new
alleged fact does not change that the identical issue Tester raises in this action was
litigated and decided in a previous proceeding. And nothing in the record suggests
that he was denied a full and fair opportunity to litigate the issue. *See Caldwell v.
Pesce*, 83 F. Supp. 3d 472, 481 ("[T]he doctrines of res judicata and collateral
estoppel apply to *pro se* litigants." (citing *Austin v. Downs, Rachlin & Martin
Burlington St. Johnsbury*, 270 F. App'x 52 (2d Cir. 2008))). Thus, Tester is
precluded from relitigating the adequacy of his medical care or the prison doctor's
refusal to prescribe him Ultram during his initial incarceration.

Moreover, a mere difference of medical opinion regarding the course of
treatment "is insufficient, as a matter of law, to establish deliberate indifference."
*Echevarria v. Canfield*, No. 12CV129A, 2014 WL 174109, at *4 (W.D.N.Y. Jan. 13,
2014), *report and recommendation adopted*, No. 12-CV-129, 2014 WL 993831
(W.D.N.Y. Mar. 13, 2014); *see also Benitez v. King*, 298 F. Supp. 3d 530, 537–38
(W.D.N.Y. 2018) (collecting cases); *Graham v. Wright*, No. 01 Civ. 9613(NRB), 2004
WL 1794503, at *5 (S.D.N.Y. Aug. 10, 2004) (no deliberate indifference where

plaintiff cannot show that defendants' decisions "deviated from prevailing medical standards"). The court should therefore find, given the allegations in this case and the fact of the previous federal judgment, that Tester's Eighth Amendment claim against Defendants is barred by res judicata or collateral estoppel.

## V.    Official-Capacity Claims for Damages

The State Defendants also move to dismiss Tester's claims against them in their official capacities, citing Vermont's sovereign immunity under the Eleventh Amendment to the United States Constitution. (Doc. 19 at 7–8.) Indeed, Tester concedes this point in his Opposition to Defendants' Motion to Dismiss. (Doc. 23 at 4.) The Eleventh Amendment[7] protects a state from suits in federal courts unless there has been an explicit and unequivocal waiver of immunity by a state or a similarly clear abrogation of immunity by Congress. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). This protection also extends to suits for money damages against state officials in their official capacity. *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

The State of Vermont has not waived its Eleventh Amendment sovereign immunity. In fact, the Vermont Legislature has specifically preserved the State's immunity under that Amendment. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived). It is also well settled that Congress did not abrogate state sovereign immunity by

---

[7] Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has also been interpreted to bar federal suits against state governments by a state's own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979). Consequently, Tester's claims against the State Defendants in their official capacities are barred.

Moreover, § 1983 allows suit against "persons." State officers sued in their official capacity are not "persons" subject to suit under § 1983. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Accordingly, the State Defendants in their official capacities are not "persons" under § 1983 and Tester's claims against them must be dismissed for this reason as well.

The court also notes that while the DOC is not listed in the "Parties" section of the Complaint, it is listed as a defendant in the caption. To the extent that the DOC is a party to this suit, and given its status as a state agency, any claims brought against it are also barred by the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 100 (finding that agencies and departments of a state are entitled to assert the state's Eleventh Amendment immunity); *see also Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) ("Neither a state nor one of its agencies . . . is a 'person' under § 1983." (quoting *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998))).

## VI.     Individual-Capacity Claims for Damages

The State Defendants further argue that Tester's claims against them in their individual capacities should be dismissed for lack of personal involvement. (Doc. 19 at 8–11.) "It is well settled in this Circuit that personal involvement of

defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted); *see also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).  However, supervisory officials may not be held liable merely because they hold positions of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam) ("[M]ere linkage in the prison chain of command is insufficient to implicate [prison officials] in a § 1983 claim." (internal quotation marks omitted)).

In order to prevail on a § 1983 cause of action against an individual, a plaintiff must establish some "tangible connection" between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Thus, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Tester's Complaint does not allege any facts from which the court can infer the State Defendants' personal involvement in the alleged constitutional violations.  Beyond naming the State Defendants as parties, none of their names are mentioned in the text of the Complaint.  Tester appears to rely on the fifth *Colon* category; he

20

states that each Defendant was aware of his pain because he "told them in person, through medical request forms, through grievances, and through court hearings." (Doc. 5 at 16; *see also* Doc. 23 at 4, 5.)  Not only are such allegations conclusory, *see Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013) ("The Complaint's conclusory statements are insufficient to demonstrate the personal involvement of any of the supervisory defendants named in this case."), but simply filing complaints with prison executives does not establish supervisory liability under § 1983.  *See Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (holding that claim was properly dismissed where only allegation pertaining to supervisory defendants was that plaintiff had filed complaints); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement.").

In addition, Tester does not contend that the State Defendants had a policy or custom of denying adequate medical care.  To the extent Tester claims that the State Defendants failed to properly train or supervise CoreCivic/CCA personnel, this court has held that "CCA employees are not subordinates of state correctional officials."  *Seifert v. Corr. Corp. of Am.*, No. 2:09 CV 119, 2010 WL 446969, at *5 (D. Vt. Feb. 1, 2010) (citing *Means v. Lambert*, No. CIV–06–1137–HE, 2008 WL 281551, at *5 (W.D. Okla. Jan. 31, 2008).  Finally, the grievances attached to Tester's Complaint cannot suffice to establish personal involvement because these grievances concerning his 2007–2014 medical treatment were all submitted to DOC staff in 2019, and as a general matter, defendants must become aware of the alleged

21

unconstitutional acts while they are ongoing and capable of being remedied. *See Jordan v. Fischer*, 773 F. Supp. 2d 255, 278 (N.D.N.Y. 2011); *Colon*, 58 F.3d at 873. Thus, Tester's claims for damages against the State Defendants in their individual capacities should be dismissed for lack of personal involvement.

## VII.  CoreCivic's § 1983 Liability

Lastly, CoreCivic (formerly CCA) argues that Tester fails to state a claim against it because he does not show that a policy or custom promulgated by CoreCivic caused the allegedly inadequate medical care he received. (Doc. 19 at 11.) As a general matter, an employer cannot be held liable for the acts of its employees under the tort theory of respondeat superior in suits brought under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). The Second Circuit has held that "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (internal citations omitted) (quoting *Monell*, 436 U.S. at 691); *see also Cochran v. CCA-LAC Med. Dep't*, No. 1:06-CV-116, 2007 WL 431118, at *2–3 (D. Vt. Feb. 5, 2007).

Tester's Complaint does not allege that his inadequate medical treatment was caused by an action taken pursuant to an official policy or custom promulgated

by CoreCivic.[8]  Although in his Opposition to Defendants' Motion to Dismiss, Tester submits that CoreCivic "created a custom and/or an unwritten policy because they knew of the violations and they . . . did nothing to fix the situation," (Doc. 23 at 4), this unpled allegation is "general and conclusory" and therefore insufficient to establish any plausible claim of liability against CoreCivic.  *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015).  Accordingly, I recommend that Tester's claims against CoreCivic be dismissed.

## VIII.  Leave to Amend

A *pro se* plaintiff should ordinarily be granted the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shomo*, 579 F.3d at 183 (internal quotation marks omitted).  However, where "amendment would be futile, leave to amend need not be given."  *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).  Because Tester's action is barred by the statute of limitations, the doctrine of sovereign immunity, and res judicata, the defects in his Complaint cannot be cured by amendment.  Leave to amend should therefore be denied.

---

[8] Although not advanced by Prison Health Services, Centurion, or Correct Care Solutions, the court observes that this ground for dismissal applies with equal force to Tester's claims against those entities.

## Conclusion

For these reasons,[9] I recommend that Defendants' Motions to Dismiss (Docs. 14, 19, 22) be GRANTED.

Dated at Burlington, in the District of Vermont, this 9th day of March 2020.

/s/ John M. Conroy          .
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision*." Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

---

[9] Because I recommend dismissal of Tester's claims against all Defendants for the reasons described in this Report and Recommendation, it is not necessary to address the issue of exhaustion under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (*See* Doc. 19 at 5–7; Doc. 23 at 3, 6; Doc. 24 at 4–5.)